May it please the court. My name is Mark Little. I represent William Singleton. Mr. Singleton was the owner-operator of two pain clinics in rural Key West Virginia. Mr. Singleton was the owner and operator of two pain clinics in rural Kentucky and two other associated businesses along with those pain clinics. After an 11-day trial in the Eastern District of Kentucky, he was convicted of various drug offenses related to the dispensation of drugs by doctors at the clinics outside the normal course of medical practice. We raised five issues in our brief. However, for the purposes of oral argument, I would like to concentrate on three of those issues, namely the exclusion of video and audio evidence that Mr. Singleton offered, the deliberate ignorance instruction which impacted the section 856 count, and the rebuttal argument made by the prosecutor, which we contend was improper. However, I am prepared to address any issue related to our briefs. Of those three, which of those issues are preserved for appeal? As if they were not raised, were contemporaneously objected to or raised before trial. My understanding, there was no objection to the jury instruction. Is that correct? Not during the argument for the jury instructions. It was raised in the motion for a new trial. A little late, isn't it? Well, it's allowed by the rule. It's just judged under a plain error standard. Okay. And the same is true for the closing argument. Closing argument. There was no contemporaneous objection to the U.S. Attorney's closing argument. Is that correct? That's correct, Your Honor. It, too, was raised in the motion for a new trial. That's also for plain error. Yes. And as to the video, is that the 30-minute video of Kimberly-Preston we're talking about? There were two different video issues. Which one do you want to talk about today, though? Both of them. There were the 30-minute video of Kimberly-Preston. That was raised. Now, I did not try the case, but from my understanding of the record, that was actually litigated by the parties through various motions in limine before the trial, and the court ruled, I believe. I couldn't find any ruling on it ahead of time. I think the court ruled that it would be excluded. No, I'm sorry. I am confused, Your Honor. That's the audio tape. That's the audio portion of Detective Alcala's comments. That's not – That was raised – that was litigated pre-trial. The police officers were commenting on people coming and going. Correct. He excluded that. Pre-trial. More prejudicial than – so that's an abuse of discretion. Correct, Your Honor. Are you raising that he abused his discretion in that? That the court abused their discretion in excluding that? Yes, Your Honor. You did object to that, right? That was objected prior to trial. Why is that an abuse of discretion? It goes to our argument that the United States disputes that the exclusion of that impacted upon Singleton's right to present a defense. And the United States is – I don't want to ask to have some relevance. Obviously, we contend it goes to the bias of these police officers. In fact, they're animous, not only against Singleton, but against even the people who went into the clinic. Your argument can't be we did the crime, but the cops were biased against us. Well, the witness, Detective Acala, did testify. And if he has a bias, for whatever reason that he's investigating the case, the jury needs to know that bias and assess that bias. That's Davis v. Lansing. Well, you could have asked a question in that regard, couldn't you? That's true, Your Honor. But that goes back to – You didn't. That goes back to, I think, the government's argument, well, there were alternative methods of showing this, other than – Were the officers questioned about this on – I don't believe so. I did not try the case, Your Honor. I don't believe they were cross-examined. They were not cross-examined, Your Honor. They were not cross-examined. So they didn't get up – For my reading of the record. They were not given a chance to admit or deny. No, for my reading of the record, they were not. So this was not rebuttal evidence to something that came out to get to their credibility. No. The court ruled prior to the officer's testimony that this audio portion of the record would be excluded from trial. That was ruled before trial. The trial judge didn't exclude or didn't prohibit impeachment from the substance of the recording. The trial judge refused to admit the recording per se as a piece of evidence, but the U.S. attorney argues, well, they still could impeach the officers by this stuff going on. Maybe it's not as effective if you don't have the audio to back it up, but you do concede that this was at least allowed for impeachment purposes. I think what the court ruled was that in responding to the motion in limine prior to trial, the court ruled that it was the court's decision to exclude the evidence, but during the trial it could revisit that. It didn't suggest any other alternative means. I think the court just said during the trial, I will revisit that if need arises. If a witness testified that went in and got drugged and then the officer gets on, you could say, didn't you call that witness a born liar or whatever? That certainly is one alternative method, Your Honor. Well, but we're talking about abuse of discretion, and you say, you know, my abuse of discretion trumps the judge's abuse of discretion. Is that your argument? Well, far be it for me as a practitioner to ever say that my discretion trumps the court's discretion. I mean, I just don't get the argument. Well, I think your argument would have to be viewed from the viewpoint of combined with the exclusion of the videotape. Well, presumably if the officer said he didn't say that, you could then play that tape too. There would be, perhaps. Perhaps the court would have revisited at that point. We don't know. The court didn't reach that point. All we know is that the court excluded. That's the problem with your record. It now becomes relevant, Your Honor, right? It may have actually reached that point. For the limited purpose of impeachment. And, I mean, that's all different. It's what you're moving for the admission of. And to have it for purposes of impeachment, you have to establish the foundation that it would be relevant for impeachment purposes. But apparently he didn't do that either. Okay, the Kimberly-Preston video I'm a little more troubled by because that was a pre-admitted exhibit. And the ruling of the trial judge, to me, appears to be an error. The trial judge says, well, because the defense did not use the video during the defense case, I'm therefore not going to allow the jury to have access to that video. Even though I think it was stipulated as to its authenticity and its admissibility. And I'm troubled that I think if parties stipulate to exhibits, they go to the jury and the judge doesn't have any business excluding stipulated things. Absent, really, injustice or very high standards. My question is, is it harmless error? Does that video, does it really affect the issues in this case? What is so crucial about that 30-minute video that you did not get a fair trial without it? I can't see it as harmless error, Your Honor, because if you look at how the United States presented their case. And in fact, when they were arguing against the defense's motion for an acquittal, they said the issue in this case was scheduling. That Singleton controlled the scheduling of patients at the clinics. And when the doctors objected and said, we don't have enough time to examine patients, Singleton overruled them and said, no, the scheduling will continue as such. You know, there will be sham examinations. There will only be, what, five minutes allowed to examine a patient. And the United States showed videos that were very cursory and short of undercover agents being examined. Five minutes, boom, and they were out. Well, evidence, as we know from Crane v. Kentucky, the defense should have a fair shot at presenting their case. It should be a two-way street. Here was a video that showed, no, this wasn't a sham. Kimberly Preston's examination wasn't a sham treatment. It lasted 30 minutes. And that's powerful evidence. The prosecutor didn't put that in. No, but it was the prosecutor's evidence. But he didn't put it in. No. He may have listed a whole bunch of witnesses he's going to call, but he's not obligated to put them in. And that was his only objection to the evidence. Is that true? No, he did not. Let me talk. Wasn't this pre-admission just a stipulation so you didn't have to call a witness to authenticate something? It's done every day in court, is it not? Correct, Your Honor. That doesn't mean it's admitted or in front of the jury unless one of the parties puts it in front of the jury, right? I think the government's only objection to the admission... Answer my question first, then we'll take the other. It wasn't put in by the government, and you didn't put it in when you rested your case, right? No, the trial attorney did not enter it into evidence, Your Honor. So at argument, he says, the judge says, well, you didn't put it in. And he says, well, I'm moving, I guess, to put it in. But he'd already closed his proofs. So isn't that an abuse of discretion? Isn't the Wilson case almost on point? Your Honor, how I see it is that as the attorney explained, the trial attorney explained, he made a mistake. He thought it would be entered into evidence. He thought he had an agreement with the United States. It was only when, at the very end of the trial, the United States stood up and said... It was at the end of the government's case when they say I rest that he knew they didn't put it in, right? No, I think it goes back, Your Honor, to his misapprehension that he didn't have to move it in. Perhaps that was his mistake. Counsel, that's the end of the prosecutor's case when he says I rest. You're not under any obligation to put a case in. So he knew right then that the government wasn't going to put that in, right? Yes, Your Honor. I mean, it's no big surprise. So how is he taken by surprise? I think his surprise was the misunderstanding that he believed that the government, in their agreement, pre-trial agreement, was agreeing that the tape would come in even if the witnesses were not called. The government stood up and said, well, wait a minute. That wasn't in our agreement. Even your counsel, when you're talking about it, they listed all the exhibits they put in for the judge and for his instructions so he could get all the exhibits that were in ready for the jury. Then your counsel comes up and says, well, there's one other that they didn't put in, and I guess I'd have to move to put it in now, but I'd like to use it for my oral argument. And the judge says, no, nobody put it into evidence. It would be unfair to admit, albeit you've authenticated it, but it would be unfair to put it in front of the jury at this point in your closing argument. Because he's also going to instruct the jury at that point that comments by counsel in closing argument is not evidence. So how can you put evidence in a closing argument for the first time? Judge, I see my time has expired. If I may answer the question? Please. I think it goes back to the point that what he wanted to do was not make comments on the evidence with this. He wanted to show the jury this as part of his closing argument. The video was very powerful throughout the trial. That's adding evidence. As he saw it at the time, it wasn't adding evidence. It had been evidence they'd already agreed. As he saw it at the time, that's exactly what he did say. I mean, there wasn't a motion to reopen the proofs by defense counsel, right? No, he did not make a motion to reopen the proofs. Actually, what happened is that after the proofs were closed, the judge was going over with both attorneys as to exhibits. And some of them, I don't think all of them, were introduced at trial. No, Your Honor. Some of them came in, but this one he excluded. My question is, even if it were error, couldn't the defense get the facts that Preston had a visit that lasted 30 minutes without the video? I mean, couldn't they just get testimony from people, Preston herself maybe, that, let's see, didn't you go to the clinic? Didn't you have a 30-minute interview? And couldn't they get the substance of the video through testimony without the video itself? And why not? But that would still make this case not a two-way street in that the government was allowed ample opportunities to introduce videos themselves, showing the jury actual examinations. I mean, is that to deny you a fair trial? To the extent when it's the central issue in the case, I believe it does, Your Honor. To answer my question, you admit that these facts in the video could have come in through testimony or other evidence other than the video itself? Perhaps they could have come in through alternative means, through cross-examination, so on, and means such as that. But is that as powerful as the government's use? It would not be as effective. Exactly, exactly. They were at most authentication of what the witnesses testified to from the stand. Is that right? Kimberly Preston did not testify, Your Honor. Defense could have called her, right? They could have called her. I assume they could have called her. They knew when the government rested that the government didn't introduce the Kimberly Preston video, so they knew that piece was gone. So they could have said, Your Honor, I want to call Kimberly Preston and have her testify as to the substance of the video, even if you can't use the video, and therefore you'd get the same facts. I did not try the case. Brother Counselor may clarify this. I think Kimberly Preston was incarcerated and not available. That's why the government said they didn't call her. She was in jail on other charges, and they said we can't find her. In fact, I think that's what they said. They couldn't find her. She was somewhere in the state system. Any further questions at this point? You've got three minutes, Rebondo? Yes, Your Honor. You'll have your three minutes. Good morning. Good morning, Your Honors, and may it please the Court. Dave Lieberman for the United States. The jury heard overwhelming evidence of Mr. Sinclair's guilt. I'm not going to address the sufficiency claims. I'll rest on my brief. As to the two evidentiary points raised, I'll address them in the order of counsel's presentation. The district court did not abuse its discretion in allowing the government to silence the audio portion of the video. I just want to point out for the court that the government's motion in limine simply requested that the district court— This is the officers talking. Yeah. That's the video. Yes. The government's motion in limine simply requested this recourse as a matter of how the government was presenting the evidence as some of the questions from the bench pointed out. The district court's ruling did not in any way restrict Mr. Singleton's ability to question Detective Acala when he took to the stand. The district court even said upon exclusion that she would be willing to revisit this matter at trial. It was never revisited. No abuse of discretion in allowing the government to do this because the comments were not relevant to the video. Did the defense try to impeach the officers? I don't recall any testimony in the record where the defense counsel attempted to impeach Detective Acala on the basis of bias or prejudice. They weren't prohibited from doing so, were they? They were not. The motion to the district court was how the government could present this video. It did not ask the district court to restrict the defendant in any way during his cross-examination or his later defense case in chief. As to the second claim, the district court's refusal to omit Kimberly Preston's videotape, the government's views, the district court did not abuse its discretion in refusing to omit a piece of evidence that although was stipulated to its authenticity and admissibility, it was not brought up at trial and the government, similar to some of the questions that Judge Sir Heinrich posed, sending a piece of the evidence to the jury without any context, without any basis to judge it. Did the judge do it for other exhibits? I've got the transcript in front of me. After the proofs were closed by both sides, the judge sat down with the attorneys and said, okay, let's go over these pre-admitted exhibits. Which ones are we giving to the jury? It's my understanding not all of them were presented to the jury during either the government's case or the defense case, that these were new exhibits and they were going to the jury room. Am I wrong about that? Your Honor, I can't give youóI was trying to actually cross-reference them while I was at the table. I can't give you a firm answer that 100% of all the other exhibits that they listed were in fact discussed at trial. That was my understanding walking into court today, but I could be wrong. Do they have to be discussed at trial? I mean, if the party stipulated ahead of time that these exhibits are going to the jury, they go to the jury, don't they, whether or not they're used at trial? I agree with that, but where's that stipulation? Well, I understand the pre-admission process, although it's not spelled out anywhere that I can find, is that they stipulate to the admission of these exhibits because they've stipulated that they're relevant, they're authentic, and they're stipulated exhibits, I thought. But they're not evidence until they're used. That means you don't have to bring a sponsor. I would use maps at trial. I would use all sorts of things at trial that never went to the jury until my closing argument, but I got it into the evidence so I could use them at closing argument, and I think that's what the defense counsel wants to do here. I agree with that. So my understanding of the pre-admission process was similar to Judge Sirheimer's, that they become evidence when they're formally introduced. But I think the court, to the extent that the court – They're introduced after the proofs close. I mean, this really is odd to me, this pre-admission process and the district judge sitting down there and going over the exhibits one at a time to make sure that these are all the pre-admitted exhibits. I'll go over them, but I can tell you that my research shows that several of them were not introduced during the case in chief of the government or the defense, that these are exhibits that pop up after proofs are closed and they go to the jury. And the defense says, Hey, this is what we agreed to, Judge. And the judge says, No, because defense counsel did not show this exhibit to the jury. They cannot rely on a closing argument. Well, that's not what the law is. To the extent that the – So, again, my understanding of the pre-admissions process is limited to the record in this case. I'll go back to and try to do those cross-references. But to the extent that there was error, that the district court inequitably treated the defense with respect – Background for reversal, it's inequitable? Well, then my next point was that it was harmless error. That's not the standard. It's inequitable. Well, to the extent that the court erred in failing to allow this exhibit in. I think that's the stronger case here that, Oh, maybe we can assume. Well, if they erred, how do you say it's harmless? So, first, the court – I don't follow that. I mean, if it's not abuse of discretion and he's erred because he's been denied the right to put in evidence, how does it become harmless? I'm sorry. I accept the premise that it was an abuse of discretion. But if the judge abused her discretion in failing to send this video back to the jury room, that error was harmless. It did not have a substantial and injurious effect on the verdict for two reasons. Well, the only way you get to that is if you say they didn't abuse their discretion or they abused their discretion, but then it becomes error. Yes, Your Honor. The government maintains its position that the court did not abuse its discretion in doing so. If the panel disagrees with that position, the government is asserting a harmless error as an alternative argument. The court – it appears from the question that the court has reviewed the video. It's Court Exhibit 1. It's preserved in the record. My adversary says that the video would show that Kimberly Preston received a 30-minute medical examination. I have viewed the video. I am not able to tease out that fact from the video. The court can make its independent judgment, but I'm confident that upon reviewing the video, it will not substantiate the claim that Mr. Singleton wants. Well, you can time how long the video is, can't you? I mean, is it not in true time? Is that what you're saying? No, the video is from when the confidential informant first met with the police officer to when she comes out of the clinic. But it's actually not clear, looking at the video, once she gets into the clinic, what is happening, who she's talking to, what area of the clinic she's in. Is she in the waiting room? Is she in back? Is she talking to a doctor? Everything is muffled. Most of the time the video camera is actually focused on the floor. And so I don't think you can tease any evidentiary value out of this video. Why did you stipulate to the pre-admission of this video that is so irrelevant to the case? We had planned to originally call Ms. Preston to the stand, and the video was a way to corroborate her testimony about how she was a confidential informant, how she met with the state police officer before going in, how she delivered the scripts or the meds to the police officer after that, which are all central points in proving that certainly our physical evidence was properly handled. But our trial team decided not to call her, and then as a result we didn't put in the video. Was she available or unavailable? I believe she was available. She was on our witness list. I don't know what circumstances prompted. Was the defense going to call her? Yes. Second point, and this goes to some of the accumulative evidence point. There was actually, I think, three witnesses testified that on occasion the patients in this clinic did receive longer examinations, 20, 25, 30 minutes. So that fact was in the record. And with respect to the specific counts pertaining to Kimberly Preston, the jury had her medical records, and the jury could make the independent determination that her treatment was outside the course of legitimate medical practice. Ms. Preston's MRI records noted the absence of any serious back condition, yet she received powerful oxycodone prescriptions for that condition. Her medical records also show on the second or third visit she had a positive urine screen for marijuana, and there was testimony in the record that these urine screens are essential for pain management clinics because they detect patients who are possibly abusing drugs and that should not also then receive oxycodone. Yet despite that positive urine screen, she still received her oxycodone prescriptions that day. So the evidence in this case, both with respect to Ms. Preston's examinations and with respect to the clinic as a whole, was overwhelmingly demonstrative that the clinics were operating outside the course of legitimate medical practice. There are several other claims raised. I'm happy to address them if the court has any concerns, but I'm also willing to submit on my brief. No. Thanks. We'd ask that you affirm. Thank you. All right, rebuttal. You've got three minutes. Your Honor, I have no specific rebuttal. I believe the court has addressed all of our questions. If the court has any questions, I'd be happy to answer them. Otherwise, I will submit. All right. Thank you very much. Case will be submitted. We're going to take a...